Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*RVRG Holdings LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RVRG HOLDINGS LLC,<br><br>*Plaintiff*<br><br>v.<br><br>007 FACTORY DIRECT STORE, 1 BY 1 BEST LUXURY STORE, 555555 STORE, 884886 CH STORE, AFTER 17 STORE, ANGEL SWORD STORE, ANTAO STORE, BLACK WHITE GRAY, BOBO HANDSOME , CHANGZHOU HENRY IMPORT AND EXPORT CO., LTD., CHENYOOU STORE, CHONGQING XINJINGQI IMPORT AND EXPORT TRADE CO., LTD., CHOSEN LUXURY STORE, CLOSE LOVER STORE, D+TRAVEL BY WALKING STORE, DESERT SPRING, DONGGUAN HONGGUAN GARMENT CO., LTD., DONGGUAN LONGNA GARMENT CO., LTD., DONGGUAN XUANZHIGE APPAREL CO., LTD., FAR FOREVER STORE, FASHALLIANCE STORE, FASHION QUALITY CLOTHING STORE, FOSHAN CHANCHENG YOUKU SHOE FIRM, FOSHAN PEANUT XISHI TRADING CO., LTD., FUZHOU CHANGTAI TEXTILE CO., LTD., FUZHOU HG CLOTHING.,LTD, FUZHOU UNTITLED TRADE CO., LTD., GET WELL STORE, | CIVIL ACTION No.:<br><br><br>**COMPLAINT**<br><br>**Jury Trial Requested** |

GIFT IN COLLECTIONS LIMITED, GODS WILL STORE, GOLD-SMALL ORDERS ONLINE STORE, GOOGO STORE, GREAT HORN DEER STORE, GUANGXI EXCELLENT IMPORT AND EXPORT TRADING CO., LTD., GUANGZHOU BENLI CLOTHING CO., LTD., GUANGZHOU HONGCHENG CLOTHING CO., LTD., GUANGZHOU JENNY TEXTILE CO., LTD., GUANGZHOU MUQIU APPAREL CO., LTD., GUANGZHOU THREE GOOD FASHION IMPORT & EXPORT CO., LTD., HIMAN STORE , HIP FRIEND STORE, HI-SMILE STORE, HUZHOU JINDOU NETWORK TECHNOLOGY CO., LTD., JIANGXI HEYWE GARMENT CO., LTD., JIANGXI KOMAR CLOTHING CO., LTD., JIANGXI NUOYUANDA TECHNOLOGY CO., JIANGXI SMILE CLOTHING CO., LTD., JIANGXI XINDA GARMENT CO., LTD., KU LI STORE, LONG SHEGNG STORE, MANDARIN FISH STORE, MARN 123, MAY FACTORY STORE, MEETYOOU STORE, MINGMIN8341 STORE, MORNING TWILIGHT STORE, MR-WARDROBE STORE, MY WIFE STORE, NANCHANG HOLLYWIN CLOTHING CO., LTD, NANCHANG TENGCAI CLOTHING TRADE CO., LTD., NANCHANG TENGWEI GARMENT CO., LTD., NICEKY OFFICIAL STORE, OLD TAILOR STORE, OP ERIC EMANUEL 998 STORE, OPEN STORE, PANG-1983 STORE, PRC HIP HOP STORE, PRC STREETWEAR STORE, QIANSHAN COUNTY ZILAN TRADING CO., LTD., QUANZHOU BUKAI TRADE CO., LTD., QUANZHOU NIKE FANS TRADING CO., LTD., QUANZHOU RUIKE APPAREL CO., LTD., QUANZHOU SI GU BO FEI SHOES AND CLOTHING TRADE CO., LTD, QUANZHOU WEITAI CLOTHING CO., LTD., RHUDE FASHION STORE, RHUDE STORE, RHUDE STORE STORE, RHUDE TATA STORE, RSRF STORE, SHANGPIN CLOTHING STORE, SHARE 819 STORE, SHENZHEN ANKEXIN TRADING CO., LTD., SHENZHEN DOGER CLOTHING CO., LTD., SHENZHEN HUICHUANGLIN TECHNOLOGY CO., LTD., SHENZHEN SHIERXI GARMENT CO., LTD., SHENZHEN SINCEREAL CLOTHING CO., LTD., SHENZHEN TONCHUNG SPORT GARMENT CO., LTD., SHINE-SUN STORE,

SHISHI CITY BOXINYU CLOTHING FIRM, SHOP INVINCIBLE BEAUTY MAN STORE, SHOP STRUGGLER STORE, SHOP1102170418 STORE, SHOP1102277082 STORE, SHOP1102637520 STORE, SHOP1102648882 STORE, SHOP1102721335 STORE, SHOP1102725476 STORE, SHOP1102809838 STORE, SHOP1102887931 STORE, SHOPPING HARAJUKU STORE, SIMPLE-FUN STORE, SOCOOOL STORE, STREETWEAR-SUP STORE, SUMMER TIME STORE, TO THE MOON STORE, TOTO321 STORE, TRUSTWORTHY2023 STORE, UNQXO STORE, VOGUES STORE, WIND OF FREEDOM STORE, XIAMEN AHONG YOUXUAN TRADING CO., LTD., XIAMEN GYMWISH TECHNOLOGY CO., LTD., XIAMEN HUIDOUFENG NETWORK TECHNOLOGY CO., LTD., XIAMEN LINGYAO TECHNOLOGY CO., LTD., XIAMEN LINJIASHENG INTERNATIONAL TRADE CO., LTD., XIAMEN YUSHIHENG GARMENTS & ACCESSORIES CO., LTD., XIAMEN ZONGYO INDUSTRY CO., LTD., X-PART STORE, XURONG STORE, YINGEER STORE, YIWU LVYUAN SPORTSWEAR FIRM, YOU WARDROBE STORE, YUJIANG LEYOU CLOTHING STORE, ZHANGZHOU YOULAIKE NETWORK TECHNOLOGY CO., LTD., ZHEJIANG YEAHSUN IMPORT&EXPORT CO., LTD., ZHONGSHAN KAWASAKI-BULLS TRADE CO., LTD and ZHUO YUE FASHION STORE,

*Defendants*

**GLOSSARY**

| Term | Definition |
|------|-----------|
| **Plaintiff or RVRG** | RVRG Holdings LLC |
| **Defendants** | 007 Factory Direct Store, 1 By 1 Best Luxury Store, 555555 Store, 884886 CH Store, After 17 Store, Angel Sword Store, Antao Store, Black White Gray, BOBO Handsome , Changzhou Henry Import And Export Co., Ltd., CHENYOOU Store, Chongqing Xinjingqi Import And Export Trade Co., Ltd., CHOSEN Luxury Store, Close lover Store, D+travel by Walking Store, Desert Spring, Dongguan Hongguan Garment Co., Ltd., Dongguan Longna Garment Co., Ltd., Dongguan Xuanzhige Apparel Co., Ltd., FAR FOREVER Store, FASHALLIANCE Store, Fashion Quality Clothing Store, Foshan Chancheng Youku Shoe Firm, Foshan Peanut Xishi Trading Co., Ltd., Fuzhou Changtai Textile Co., Ltd., Fuzhou HG Clothing.,Ltd, Fuzhou Untitled Trade Co., Ltd., GET WELL Store, Gift In Collections Limited, Gods Will Store, Gold-small orders online Store, Googo Store, Great Horn Deer Store, Guangxi Excellent Import And Export Trading Co., Ltd., Guangzhou Benli Clothing Co., Ltd., Guangzhou Hongcheng Clothing Co., Ltd., Guangzhou Jenny Textile Co., Ltd., Guangzhou Muqiu Apparel Co., Ltd., Guangzhou Three Good Fashion Import & Export Co., Ltd., Himan Store , Hip Friend Store, Hi-smile Store, Huzhou Jindou Network Technology Co., Ltd., Jiangxi Heywe Garment Co., Ltd., Jiangxi Komar Clothing Co., Ltd., Jiangxi Nuoyuanda Technology Co., Jiangxi Smile Clothing Co., Ltd., Jiangxi Xinda Garment Co., Ltd., ku li Store, LONG SHEGNG Store, Mandarin Fish Store, MARN 123, May Factory Store, MEETYOOU Store, Mingmin8341 Store, Morning Twilight Store, mr-wardrobe Store, My Wife Store, Nanchang Hollywin Clothing Co., Ltd, Nanchang Tengcai Clothing Trade Co., Ltd., Nanchang Tengwei Garment Co., Ltd., Niceky Official Store, Old Tailor Store, OP Eric Emanuel 998 Store, Open Store, Pang-1983 Store, PRC Hip Hop Store, PRC Streetwear Store, Qianshan County Zilan Trading Co., Ltd., Quanzhou Bukai Trade Co., Ltd., Quanzhou Nike Fans Trading Co., Ltd., Quanzhou Ruike Apparel Co., Ltd., Quanzhou Si Gu Bo Fei Shoes And Clothing Trade Co., Ltd, Quanzhou Weitai Clothing Co., Ltd., Rhude Fashion Store, Rhude Store, RHUDE Store Store, RHUDE TATA Store, RSRF Store, Shangpin Clothing Store, Share 819 Store, Shenzhen Ankexin Trading Co., Ltd., Shenzhen Doger Clothing Co., Ltd., Shenzhen Huichuanglin Technology Co., Ltd., Shenzhen Shierxi Garment Co., Ltd., Shenzhen Sincereal Clothing Co., Ltd., Shenzhen Tonchung Sport Garment Co., Ltd., Shine-sun Store, Shishi City Boxinyu Clothing Firm, Shop Invincible Beauty Man |

| | |
|---|---|
| | Store, Shop Struggler Store, Shop1102170418 Store, Shop1102277082 Store, Shop1102637520 Store, Shop1102648882 Store, Shop1102721335 Store, Shop1102725476 Store, Shop1102809838 Store, Shop1102887931 Store, shopping Harajuku Store, Simple-fun Store, SOCOOOL Store, Streetwear-Sup Store, Summer Time Store, To The Moon Store, Toto321 Store, Trustworthy2023 Store, Unqxo Store, VOGUES Store, Wind of Freedom Store, Xiamen Ahong Youxuan Trading Co., Ltd., Xiamen Gymwish Technology Co., Ltd., Xiamen Huidoufeng Network Technology Co., Ltd., Xiamen Lingyao Technology Co., Ltd., Xiamen Linjiasheng International Trade Co., Ltd., Xiamen Yushiheng Garments & Accessories Co., Ltd., Xiamen Zongyo Industry Co., Ltd., X-PART Store, XURONG Store, YINGEER Store, Yiwu Lvyuan Sportswear Firm, You Wardrobe Store, Yujiang Leyou Clothing Store, Zhangzhou Youlaike Network Technology Co., Ltd., Zhejiang Yeahsun Import&Export Co., Ltd., Zhongshan Kawasaki-Bulls Trade Co., Ltd and Zhuo Yue Fashion Store |
| **Alibaba** | Alibaba.com Singapore E-Commerce Pte. Ltd. and/or any other entity that owns and/or operates the Alibaba.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | AliExpress E-Commerce One Pte., Ltd. and/or any other entity that owns and/or operates the AliExpress.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Dirocie Dec.** | Declaration of Yira Dirocie in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's |

| | Application |
|---|---|
| **Rhude Products** | Men's and women's apparel, accessories, and footwear by the globally successful ready-to-wear brand and design venture evoking streetwear and luxury fashion, Rhude |
| **Rhude Marks** | U.S. Trademark Registration Nos.: 5,827,712 for "RHUDE" for a variety of goods in Class 18; 5,827,706 for "RHUDE" for goods in Class 25; and 5,385,699 for "RHUDE" for a variety of goods in Class 25 |
| **Counterfeit Products** | Products bearing or used in connection with the Rhude Marks, and/or products in packaging and/or containing labels bearing the Rhude Marks, and/or bearing or used in connection with marks that are confusingly similar to the Rhude Marks and/or products that are identical or confusingly similar to the Rhude Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group) and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result |

| | of any order entered in this action, or otherwise |
|---|---|

Plaintiff, a limited liability company organized and existing under the laws of the State of California, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action involves claims for trademark infringement of Plaintiff's federally registered trademark in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims, arising from the infringement of the Rhude Marks, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Rhude Products by Defendants.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide,

including to those in the U.S., and specifically New York.

       c.      Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

       d.      Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

       e.      Upon information and belief, Defendants are aware of Plaintiff, its Rhude Products and Rhude Marks, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.      Plaintiff RVRG Holdings is a limited liability company organized and existing under the laws of the State of California, with an address 9200 W. Sunset Blvd, Suite 600, Los Angeles, California 90069.

6.      Upon information and belief, Defendants are merchants on the Alibaba and AliExpress online marketplace platforms, through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the screenshots of Defendants' Merchant Storefronts in **Exhibit C**.

## GENERAL ALLEGATIONS
### Plaintiff and Its Well-Known Rhude Products

7.      Rhude, founded in 2015 by self-taught designer Rhuigi Villaseñor, is a globally

successful ready-to-wear brand and design venture evoking streetwear and luxury fashion. Rhude distributes the Rhude Products, including men's and women's apparel, accessories, and footwear, through various channels of trade in the United States and abroad. Images of the Rhude Products are attached hereto as **Exhibit A** and incorporated herein by reference.

8.      The Rhude Products are marketed under the Rhude Marks. The Rhude brand is recognized for its vintage nostalgia, American typography and iconography and visual commentary on Los Angeles style and culture.

9.      The Rhude Products are sold direct to consumer via Rhude's official website, https://rh-ude.com, and distributed through multi-brand retailers including, but not limited to, Nordstrom, Bergdorf Goodman, Neiman Marcus, Saks Fifth Avenue and SSENSE.

10.     Since the launch, the Rhude brand and Rhude Products have been featured in numerous publications, including, but not limited to, *Esquire*, *Forbes* and *Hypebeast*.

11.     The Rhude Products typically retail for between $60.00 - $5,000.00.

12.     While Plaintiff has gained significant common law trademark and other rights in its Rhude Marks and Rhude Products through use, advertising and promotion, Plaintiff also protected its valuable rights by filing for and obtaining federal trademark registrations.

13.     For example, RVRG owns the following U.S. Trademark Registration Nos.: 5,827,712 for "RHUDE" for a variety of goods in Class 18; 5,827,706 for "RHUDE" for goods in Class 25; and 5,385,699 for "RHUDE" for a variety of goods in Class 25. True and correct copies of the registrations for the Rhude Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

14.     The Rhude Marks are currently in use in commerce in connection with the Rhude Products.  The Rhude Marks were first used in commerce on or before the dates of first use as

reflected in the respective registrations attached hereto as **Exhibit B**.

15.     The success of the Rhude Products is due in part to Plaintiff's marketing and promotional efforts. These efforts include advertising and promotion through social media, Plaintiff's website (available at https://rh-ude.com/) and print and internet-based advertising.

16.     Plaintiff's success is also due to its use of the highest quality materials and processes in making the Rhude Products.

17.     Additionally, Plaintiff owes a substantial amount of the success of the Rhude Products to its consumers and word-of-mouth buzz that its consumers have generated.

18.     Plaintiff's efforts, the quality of Plaintiff's products and the word-of-mouth buzz generated by its consumers have made the Rhude Marks and Rhude Products prominently placed in the minds of the public. Members of the public and retailers have become familiar with the Rhude Marks and Rhude Products and have come to associate them exclusively with Rhude. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such associations.

19.     Plaintiff has gone to great lengths to protect its interests in the Rhude Products and the Rhude Marks. No one other than Plaintiff and its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Rhude Marks, or use the Rhude Marks in connection with goods or services or otherwise, without the express permission of Plaintiff.

### Alibaba and AliExpress and Defendants' User Accounts

20.     Alibaba and AliExpress are online marketplace and e-commerce platforms that allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

21.     As leaders of China's e-commerce and digital retail market, Alibaba and AliExpress have generated hundreds of billions in sales worldwide.[2] International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress. For example, in 2019, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[3]

22.     In the fiscal year ending on March 31, 2021, the Alibaba Defendants' revenue was $109.48 billion, an increase of 41% year-over-year[4,] and in the recent fiscal year ending March 31, 2022, the Alibaba Defendants generated $134.5 billion.[5]

23.     The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[6]

24.     Additionally, according to Business Insider, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[7]   In 2021, Alibaba set a new Singles Day record with $84.5 billion in

---

[2] *See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

[3] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales*, DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.

[4] *Alibaba Group Announces March Quarter and Full Fiscal Year 2021 Results*, SEC.GOV (May 13, 2021) https://www.sec.gov/Archives/edgar/data/1577552/000110465921065916/tm2116252d1_ex99-1.htm

[5] *See* Yihan Ma, *Annual Revenue of Alibaba Group From Financial Year 2012-2022*, STATISTA (Jul. 27, 2022), https://www.statista.com/statistics/225614/net-revenue-of-alibaba/; Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

[6] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China*, DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[7] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

sales across the eleven (11) day event.[8]

25.     Alibaba and AliExpress declined to share their total sales for Singles Day 2022; however, indicated that sales were "in line" with the $84.5 billion reported in 2021.[9]

26.     As addressed in the Wall Street Journal, Fortune and the New York Times,[10] and as reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on Alibaba and AliExpress,[11] an astronomical number of counterfeit and infringing products are offered for sale and sold on Alibaba.com and AliExpress.com, as well as other online marketplace platforms, at a rampant rate.

27.     Additionally, the Office of the United States Trade Representative ("USTR") publishes an annual "Notorious Markets List" which highlights specific physical and online markets around the world that are reported to be engaging in and facilitating substantial copyright piracy and trademark counterfeiting, and which is intended to help the U.S. and foreign governments prioritize intellectual property rights (IPR) enforcement that protects job-supporting innovation and creativity in the U.S. and around the world.[12]

---

[8] Dan Berthiaume, *Alibaba sets new Singles Day record with $84.5 billion in sales*, CHAIN STORE AGE (Nov. 11, 2021), https://chainstoreage.com/alibaba-sets-new-singles-day-record-845-billion-sales.

[9] Evelyn Cheng, *Alibaba says 15% of China delivery areas were disrupted during Singles Day shopping festival*, CNBC (Nov. 17, 2022) https://www.cnbc.com/2022/11/18/alibaba-says-15percent-of-china-delivery-areas-disrupted-during-singles-day.html.

[10] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes*, N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[11] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba*, MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

[12] *See* Press Release, Office of the United States Trade Representative, USTR Releases 2020 Review of Notorious Markets for Counterfeiting and Piracy (Jan. 2021), *available at* https://ustr.gov/about-us/policy-offices/press-

28.     In December 2016, the USTR added Alibaba to its "Notorious Markets" list due to its high levels of "reported counterfeiting and piracy."[13]

29.     In February of 2022, the Office of the United States Trade Representative ("USTR") added AliExpress to its list of 2021 "notorious markets", which are "markets that reportedly facilitate substantial trademark counterfeiting."[14]

30.     On January 31, 2023, the USTR released its 2022 Review of Notorious Markets for Counterfeiting and Piracy, and AliExpress was again designated a "notorious market".[15] The USTR specifically noted that a "key concern of right holders is that penalties for repeat infringers do not stop counterfeit sellers on AliExpress from remaining on the market, such as by operating multiple accounts.[16]

31.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Alibaba and AliExpress, as well as potentially yet undiscovered additional online marketplace platforms.

32.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located

office/press-releases/2021/january/ustr-releases-2020-review-notorious-markets-counterfeiting-and-piracy; Office of The United States Trade Representative, 2020 Review of Notorious Markets for Counterfeiting and Piracy (2020), *available                                                                                                                                             at* https://ustr.gov/sites/default/files/files/Press/Releases/2020%20Review%20of%20Notorious%20Markets%20for%20Counterfeiting%20and%20Piracy%20(final).pdf.

[13] Laura Stevens, *Alibaba Lands on U.S. Governments' 'Notorious Markets' List for Fakes,* WALL STREET JOURNAL (Dec. 21, 2016), https://www.wsj.com/articles/alibaba-lands-on-u-s-governments-notorious-markets-list-for-fakes-1482356081; *see also Alibaba Lands on U.S. Notorious Markets List for Lax Counterfeit Policies*, CHINATECHNEWS (Dec. 22, 2016), https://www.chinatechnews.com/2016/12/22/24615-alibaba-lands-on-u-s-notorious-markets-list-for-lax-counterfeit-policies.

[14] Michelle Toh, *The US accuses Tencent and Alibaba of letting sellers traffic fake goods*, CNN (Feb. 18, 2022) https://www.cnn.com/2022/02/17/business/china-tencent-alibaba-notorious-markets-list-intl-hnk/index.html.

[15] USTR Releases 2022 Review of Notorious Markets for Counterfeiting and Piracy, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE (Jan. 31, 2023), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy.

[16] *Id.*

in the U.S., including New York, and throughout the world.

33.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

34.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

<u>**Defendants' Wrongful and Infringing Conduct**</u>

35.     Particularly in light of Plaintiff's success with its Rhude Products, as well as the reputation they have gained, Plaintiff and its Rhude Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Rhude Products and Rhude Marks and Plaintiff investigates and enforces against such activities.

36.     Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts.  Screenshots of Infringing Listings from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference.

37.     Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Rhude Products or to use the Rhude Marks,

9

or any marks that are confusingly similar to the Rhude Marks.

38.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Rhude Products, only with minor variations that no ordinary consumer would recognize.

39.     During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit C**.

40.     Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit C**.

41.     For example, below on the left is an image of one of Plaintiff's Rhude Products. Depicted further below is a listing for Defendant 555555 Store's Counterfeit Product ("555555 Store Infringing Listing" and "555555 Store Counterfeit Product," respectively).  The 555555 Store Infringing Listing appears on Defendant 555555 Store's Merchant Storefront, https://www.aliexpress.com/store/1101444472, and offers the 555555 Store Counterfeit Product for $12.99 per item, using, featuring and/or incorporating one or more of the Rhude Marks and/or confusingly similar marks in the listing title "2023ss Cotton Sun Printing Classic Top Tee

**RHUDE** Black Women Men's Casual Oversize T Shirt hiphop" (emphasis added) and/or in the descriptions and/or product images in the body of the listing. Further, the 555555 Store Counterfeit Product is virtually identical to one of Plaintiff's Rhude Products and features and/or incorporates the Rhude Marks. There is no question that the 555555 Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Rhude Products or that the 555555 Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Rhude Marks:

<u>**Rhude Product**</u>                     <u>**Defendant's Counterfeit Product**</u>

          

42.    By way of another example, below on the left is an image of one of Plaintiff's Rhude Products.  Depicted further below is a listing for Defendant Black White Gray's Counterfeit Product ("Black White Gray Infringing Listing" and "Black White Gray Counterfeit Product," respectively). The Black White Gray Infringing Listing appears on Defendant's Merchant Storefront, https://www.aliexpress.com/store/1102801895, and offers the Black White Gray Counterfeit Product for $22.36 per item, using, featuring and/or incorporating one or more of the Rhude Marks and/or confusingly similar marks in the listing title "Patchwork **Rhude** Jacket Men

11

Women Coconut Tree Print Oversize Outerwear Coats" (emphasis added) and/or in the descriptions and/or product images in the body of the listing. Further, the Black White Gray Counterfeit Product is virtually identical to one of Plaintiff's Rhude Products and features and/or incorporates the Rhude Marks. There is no question that the Black White Gray Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Rhude Products or that the Black White Gray Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Rhude Marks:

**<u>Rhude Product</u>**                                          **<u>Defendant's Counterfeit Product</u>**

     

43.     As another example, below on the left is an image of one of Plaintiff's Rhude Products.  Depicted further below is a listing for Defendant Guangzhou Jenny Textile Co., Ltd's Counterfeit Product ("Guangzhou Jenny Textile Co., Ltd Infringing Listing" and "Guangzhou Jenny Textile Co., Ltd Counterfeit Product," respectively). The Guangzhou Jenny Textile Co., Ltd Infringing Listing appears on Defendant Guangzhou Jenny Textile Co., Ltd Merchant Storefront, https://gzjenny.en.alibaba.com/minisiteentrance.html, and offers the Guangzhou Jenny Textile Co., Ltd Counterfeit Product for a range of $9.31-12.31 (depending on quantity purchased), using,

featuring and/or incorporating one or more of the Rhude Marks and/or confusingly similar marks in the listing title "Custom Print Men Zipper Sports Nylon **Rhude** Shorts Casual Drawstring High Street Mens Above Knee Shorts With Pockets" (emphasis added) and/or in the descriptions and/or product images in the body of the listing. Further, the Guangzhou Jenny Textile Co., Ltd Counterfeit Product is virtually identical to one of Plaintiff's Rhude Products and features and/or incorporates the Rhude Marks. There is no question that Guangzhou Jenny Textile Co., Ltd Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Rhude Products or that the Guangzhou Jenny Textile Co., Ltd Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Rhude Marks:

<table>
<tr><td align="center"><u>**Rhude Product**</u></td><td align="center"><u>**Defendant's Counterfeit Product**</u></td></tr>
<tr><td align="center"></td><td align="center"></td></tr>
</table>

44.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Rhude Marks, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Rhude Marks in order to confuse consumers

into believing that such Counterfeit Products are the Rhude Products and aid in the promotion and sales of their Counterfeit Products. Defendants' conduct began long after Plaintiff's adoption and use of the Rhude Marks, after Plaintiff obtained federal registrations in the Rhude Marks, as alleged above, and after Plaintiff's Rhude Products and Rhude Marks became well-known to the purchasing public.

45.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Rhude Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Rhude Products, and in bad faith adopted the Rhude Marks.

46.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, its Rhude Marks and Rhude Products.

47.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

48.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Rhude Marks, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

49.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

50.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51.     Plaintiff is the exclusive owner of all right and title to the Rhude Marks.

52.     Plaintiff has continuously used the Rhude Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as Exhibit B.

53.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Rhude Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Rhude Marks and/or used spurious designations that are identical with, or indistinguishable from, the Rhude Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

54.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Rhude Marks through their participation in such activities.

55.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Rhude Marks to packaging, point-of-purchase materials, promotions and/or

advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

56.     Defendants' unauthorized use of the Rhude Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Rhude Marks.

57.     Defendants' actions constitute willful counterfeiting of the Rhude Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

58.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Rhude Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Rhude Marks.

59.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of

Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
**(Infringement of Registered Trademarks)**
**[15 U.S.C. § 1114/Lanham Act § 32(a)]**

60. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

61. Plaintiff has continuously used the Rhude Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as Exhibit B.

62. Plaintiff, as owner of all right, title and interest in and to the Rhude Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

63. Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Rhude Marks.

64. Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Rhude Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Rhude Products and/or related products bearing the Rhude Marks into the stream of commerce.

65. Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or

colorable imitations of the Rhude Marks and/or which are identical or confusingly similar to the Rhude Marks.

66.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Rhude Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

67.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Rhude Marks.

68.     Defendants' egregious and intentional use of the Rhude Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Rhude Products or are otherwise associated with, or authorized by, Plaintiff.

69.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Rhude Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

70.     Defendants' continued, knowing, and intentional use of the Rhude Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Rhude Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

71.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and

damage to its business and its valuable rights in and to the Rhude Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Rhude Marks.

72.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

73.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

74.     Plaintiff, as the owner of all right, title and interest in and to the Rhude Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

75.     The Rhude Marks are inherently distinctive and/or have acquired distinctiveness.

76.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Rhude Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of

Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Rhude Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Rhude Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

77.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Rhude Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Rhude Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Rhude Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Rhude Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

78.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Rhude Marks would cause confusion, mistake or deception among purchasers, users and the public.

79.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff's Rhude Products and Rhude Marks.

80.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Rhude Products and by depriving Plaintiff of the value of its Rhude Marks as a commercial asset in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Rhude Marks.

81.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
#### (Unfair Competition)
#### [New York Common Law]

82.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

83.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Rhude Products to induce, and did induce and intend and will continue to induce, customers to purchase their

Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

84.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

85.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

86.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

87.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Rhude Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Rhude Marks as

a commercial asset in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

88.     As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Rhude Marks, and such other compensatory damages as the Court determines to be fair

and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.    For an award of damages to be proven at trial for common law unfair competition;

F.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.    manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

     ii.    directly or indirectly infringing in any manner any of Plaintiff's Rhude Marks;

   iii.    using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Rhude Marks to identify any goods or services not authorized by Plaintiff;

   iv.    using any of Plaintiff's Rhude Marks or any other marks that are confusingly similar to the Rhude Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising,

24

marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial

25

Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.   providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.   instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

G.   For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Rhude Marks, or bear any marks that are confusingly similar to the Rhude Marks;

H.   For an order of the Court requiring that Defendants deliver up for destruction to

Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Rhude Marks, or bear any marks that are confusingly similar to the Rhude Marks pursuant to 15 U.S.C. § 1118;

I.    For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.    For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.    For Plaintiff's reasonable attorneys' fees;

M.    For all costs of suit; and

N.    For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: December 11, 2023                    Respectfully submitted,

                                             EPSTEIN DRANGEL LLP

                                             BY: _____

Gabriela N. Nastasi
gnastasi@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:      (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiff*
*RVRG Holdings LLC*